IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THOMAS JOHNSON,

       Petitioner,

v.                                          14cv909 KG/WPL

VINCENT HORTON, Warden, and
GARY K. KING, New Mexico Attorney General,

       Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    In May of 2012, Thomas Johnson pled guilty to four offenses from three indictments in the Second Judicial District Court of New Mexico. (*See* Ex. D.)[1] After relief was denied in several post-conviction proceedings at the state level, Johnson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) I conclude that Johnson's claims are without merit and recommend that his petition and request for an evidentiary hearing be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

    Johnson does not discuss the events leading to the arrests relevant to this petition, but the record contains witness statements that provide background on two of the underlying domestic violence incidents. In CR11-02798, which resulted in four charges (*see* Ex. S), Johnson's girlfriend, Misty Frazee, completed a Domestic Violence Victim's Statement (*see* Ex. M attachment A at 1-3). And in CR12-00186, which resulted in two charges (*see* Ex. T), Frazee completed another Domestic Violence Victim's Statement (*see* Ex. M attachment B at 1-4), and two neighbors also completed statements (*see id.* at 5, 6).

---

[1] Unless otherwise indicated, all exhibits are to Respondents' Answer (Doc. 6).

Johnson was named in three separate indictments on charges of: trafficking a controlled substance (first-degree felony) (*see* Ex. R), aggravated battery against a household member resulting in great bodily harm (*see* Ex. S), aggravated assault against a household member with a deadly weapon (three counts) (*see* Exs. S, T), one count with a firearm enhancement (*see* Exs. T, D), battery against a household member (three counts) (*see* Exs. S, T), and kidnapping (two counts, first-degree felonies) (*see* Ex. S). His cases were "consolidated for plea purposes" (Ex. E at 1), and he faced "45-70$\frac{1}{2}$ years, 45 years of which would have been mandatory" (Ex. M at 3).

On May 17, 2012, Johnson executed a plea agreement in the Second Judicial District Court of New Mexico by which he pled guilty to the following four offenses: trafficking a controlled substance (cocaine) (first-degree felony), aggravated battery against a household member (great bodily harm) (third-degree felony), aggravated assault against a household member (deadly weapon) (fourth-degree felony), and aggravated assault against a household member (deadly weapon) (fourth-degree felony) (firearm enhancement). (*See* Ex. D.) The parties did not agree on a specific sentence, but agreed that Johnson could be incarcerated for up to fifteen years. (*See* Ex. D at 2-3.) However, Johnson violated the conditions of the plea agreement, and the court voided the applicable sentencing provision on August 21, 2012. (*See* Exs. F, G).

On September 27, 2012, the state district judge sentenced Johnson to a term of twenty-two years of imprisonment. (*See* Ex. A at 4.) After sentencing, Johnson filed a state habeas corpus petition pro se (*see* Ex. I), and his appointed attorney later filed a clarification document (*see* Ex. K). One of the issues raised in the clarification document was whether the sentence computation reflected the intention of the sentencing judge. (*See* Ex. K at 3.) At a Preliminary Disposition Hearing on May 12, 2014, the state district judge reduced Johnson's sentence to

twenty-one years incarceration. (*See* Ex. B at 4.) On May 29, 2014, the judge denied the remaining three claims in Johnson's habeas petition and explained that Johnson's sentence reduction at the preliminary disposition hearing was due to "an ambiguity in the oral pronouncement of sentence and the written Judgment and Sentence." (Ex. O at 1.) Johnson filed a petition for writ of certiorari to the New Mexico Supreme Court on June 26, 2014 (Ex. P), but it was denied on August 15, 2014 (Ex. Q).

Johnson now brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) In the "Claims" section of his federal petition, he states: "I wish to use the same grounds I used in my state Habeas Corpus" (Doc. 1 at 6), which he summarized a few pages earlier in the "Post-Conviction Proceedings" section of his federal petition as: (1) "Ineffective assistance of counsel"; (2) "Plea not voluntarily made"; and (3) "[I]nsufficient evidence" (*see id.* at 3). His summary matches the claims clarified by his appointed attorney in his state petition. (*See* Ex. K at 2.) Johnson also filed a Motion to Enter Newly Discovered Information on September 8, 2015. (Doc. 14.) The State responded that "[t]o the extent that Mr. Johnson appears to ask the Court to supplement the habeas record to include the May 31, 2013, *Nolle Prosequi* that he has attached to his motion . . . Respondents do not object." (Doc. 16 at 1.)

## STANDARD OF REVIEW

Johnson filed his federal petition on October 7, 2014, which is after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so AEDPA's standards apply to guide this Court's determination. AEDPA requires federal courts to be "exquisitely deferential to the state court's resolution of the [petitioner's] claims" when evaluating § 2254 habeas petitions. *Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012). The Supreme Court aptly described AEDPA as establishing "a difficult to meet and highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted).

Section 2254 allows the Court to entertain habeas applications from a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, if the state court adjudicates the merits of a claim, as happened here,[2] federal habeas relief is only available if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at § 2254(d)(1). When assessing whether the state court's decision was unreasonable, the Court must consider the decision "in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (*per curiam*); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003)).

State courts frequently issue summary dismissals of a petitioner's claims for relief. Such dismissals are presumed to be adjudications on the merits even if the court provided no reasoning to support its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This presumption may be overcome only if "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. Even if the state court does not explain its reasoning, the petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98; *see Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (clarifying that under AEDPA, "we owe

---

[2] State District Judge Nakamura, in her *Final Order on Petition of Habeas Corpus*, expressly found that: (1) "Petitioner received effective assistance of counsel"; (2) "Plea entered into on May 17, 2012 was voluntarily entered into"; and (3) "There was a sufficient factual basis to support the plea entered into." (Ex. O at 1.)

deference to the state court's result, even if its reasoning is not expressly stated") (emphasis omitted).

A state court's decision is contrary to law if the rule that it applies clearly contradicts governing law, as established by the Supreme Court, or if it decides a case differently than the Supreme Court did when presented with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405, 413 (2000). The decision is an unreasonable application of law if the state court applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 410) (internal quotation marks and emphasis omitted). "Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quotation omitted). If the Court determines that the state court decision is not entitled to deference under § 2254(d), it must evaluate the petitioner's claims de novo. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

Just as the reviewing Court must show deference to the state court's determination of the law, it must also show deference to the state court's determination of the facts. A petition for habeas corpus will not be granted due to the state court's determination of the facts unless the adjudication of the claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's determination of the facts is unreasonable if it plainly misapprehends the record in making its factual findings and the misapprehension goes to a factual issue that is central to the claim. *Wiggins*, 539 U.S. at 528.

Lastly, because Johnson is a pro se litigant, I must construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## DISCUSSION

### I.   Mixed Petition

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition." *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion exists when the claim "has been 'fairly presented' to the state court." *Id.* (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). "Fair presentation," in turn, "means that the petitioner has raised the 'substance' of the federal claim in state court," *id.* (quoting *Picard*, 404 U.S. at 278), and has "invok[ed] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner bears the burden of showing exhaustion. *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).

A so-called "mixed" petition exists when "a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that

have not." *Rhines v. Weber*, 544 U.S. 269, 271 (2005). Johnson likely has one unexhausted claim—"plea was not voluntarily made" (Doc. 1 at 3). Evaluating exhaustion and whether his petition is mixed turns on how I apply the liberal pleading construction standard for pro se litigants and whether attaching lower court filings to a state certiorari petition is a valid means of asserting a claim. I find that neither question resolves in Johnson's favor.

Though I am required to construe Johnson's pleadings liberally, he raised a new claim in his petition for certiorari, which means the new claim was not adequately raised in the state's appellate review process. *See O'Sullivan*, 526 U.S. at 845. Specifically, in his state habeas petition, Johnson phrased the claim this way: "conviction obtained by plea of guilty which was unlawfully induced by coercion," (Ex. I at 2), which his appointed counsel later clarified as "[w]hether the Plea entered into on May 17, 2012 was voluntarily entered into and not induced by coercion and the withholding of exculpatory information" (Doc. K at 2). Comparatively, in his petition for certiorari, under the "Questions Presented for Review" section, Johnson completed the prompt "Whether the trial court erred" by writing: "[n]ot allowing Petitioner to withdraw his plea[.]" (Ex. P at 2.) Coercion to accept a plea and the inability to withdraw a presumably voluntary plea are substantively different claims that are not necessarily related.

Moreover, even though Johnson attached his state habeas petition to his petition for cert, "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Neither the liberal pleading standard nor the attached filings suggest exhaustion on Johnson's involuntary plea claim. I do note, however, that if I have

construed the pro se pleading requirement too narrowly—and Johnson, in fact, exhausted the claim—the result does not change, as I still evaluate the merits of the claim.

When faced with a mixed petition, the Court has several options, including "ignor[ing] the exhaustion requirement altogether and deny[ing] the petition on the merits if none of the petitioner's claims has any merit." *Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (quotation and citations omitted).

Here, the option of denying the petition on the merits is appropriate because none of Johnson's claims have merit, a subsequent petition to this court would be time barred,[3] and Johnson has not established good cause to stay his petition.[4]

---

[3] Under AEDPA, Johnson had one year to file an application for a writ of habeas corpus from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "[A] petitioner's conviction is not final and the one-year limitation period for filing a federal habeas petition does not begin to run until—following a decision by the state court of last resort— 'after the United States Supreme Court has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the Supreme Court has passed.'" *Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (citation omitted). Here, the New Mexico Supreme Court denied Johnson's petition on August 15, 2014 (see Ex. Q), and his ninety days to file a petition for certiorari to the U.S. Supreme Court ended on November 13, 2014. *See* Sup. Ct. R. 13(1); *see also Satterfield v. Milyard*, 343 F. App'x 372, 374 (10th Cir. 2009) (unpublished) (clarifying that the ninety day extension applies only if the petitioner applies to the state court of last resort and that court denies review). Thus, Johnson's one-year clock began to run on November 13, 2014, and he had up to and including November 13, 2015 to file his petition. Johnson filed his petition in advance of his one year time period—on October 7, 2014 (*see* Doc. 1 at 1)—but his one year AEDPA time period has expired because statutory tolling does not apply. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) ("[A]n application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).") This expiration militates against options (1) and (3) because, even if Johnson were able to exhaust the claim in state court, the Court would likely be unable to hear it on review. *See Tapia v. Lemaster*, 172 F.3d 1193, 1195 (10th Cir. 1999) (Petitioner who elects to proceed only on exhausted claims is deemed to have abandoned all unexhausted claims and those claims may not be re-brought in federal court unless the petitioner can meet the requirements for filing a successive petition); 28 U.S.C. § 2244(b)(1).

[4] The stay and abeyance option requires that Johnson establish good cause for his failure to exhaust the claim in state court. *See Rhines*, 544 U.S. at 277. But "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id*.

## II. Ineffective Assistance of Counsel

Johnson argues that he was denied "his Constitutional right to the effective assistance of counsel at all stages of the proceedings" in violation of the Sixth Amendment for two reasons: (1) "Counsel failed to pursue potentially meritorious pre-trial motions to challenge the domestic violence charges," and (2) "Counsel did not move to withdraw plea at the time of sentencing when AV Misty Frazee disclosed to the court that the charges were trumped up." (Ex. K at 2; *see also* Ex. I at 3, 6.)

To prevail, Johnson must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because this is a § 2254 petition, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

### A. Pre-Trial Motions

Johnson addressed the lack of pretrial motions in four filings: his state habeas petition (Ex. I at 3, 7), his attorney's clarification document (Ex. K at 2), his certiorari petition (Ex. P at 4), and his federal habeas petition (Doc. 1 at 6, 17, 21). The allegations in the certiorari petition are robust and specific, while the allegations in the remaining three documents are conclusory. These differences are pertinent for two reasons. First, I am unable to consider the expanded claim in the certiorari petition. And second, the allegations in the remaining three filings provide insufficient factual support to sustain a claim for relief.

I am unable to consider the enlarged ineffective assistance of counsel argument in the certiorari petition because submitting a broadened claim to the state supreme court does not constitute "fair presentation." *See Parkhurst v. Shillinger*, 128 F.3d 1366, 1368 (10th Cir. 1997) ("[P]etitioner's presentation of his claim to the Wyoming Supreme Court via petition for writ of certiorari was . . . ineffective to exhaust his state remedies"); *see also Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990) ("Submitting a new claim to a state's highest court on discretionary review does not constitute a fair presentation. Thus, merely submitting [an] expanded claim [for ineffective assistance of counsel] to the Illinois Supreme Court did not constitute a fair presentation") (citations omitted). Even if I could consider the enlarged claim, it would still fail for the reasons explained below.

Johnson's other three filings that addressed the lack of pretrial motions fail because they provide insufficient factual support for his claim. Specifically, he offers only the following conclusions: "[C]ounsel refused to submit any [p]re-trial motions" (Ex. I at 3); "Counsel failed to pursue potentially meritorious pre-trial motions to challenge the domestic violence charges," (Ex. K at 2); and "I wish to use the same grounds I used in my State Habeous Corpus" (Doc. 1 at 6). Because "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," *Hall*, 935 F.2d at 1110, this claim must fail.

B. <u>Withdrawal of Plea</u>

Johnson also contends that his counsel should have moved to withdraw his guilty plea after Frazee "disclosed to the court that the charges were trumped up." (Ex. K at 2.) Johnson relies on the type of instrument used—a BB gun—rather than the method in which it was used—to threaten someone—when asserting that counsel should have withdrawn his plea. His claim

rests on his belief that "Petitioner never possessed any firearm [or] deadly weapon[.]" (Doc. 1 at 17.)

Johnson's argument fails because both the evidence and law support counsel's decision not to attempt to withdraw the plea, and therefore I cannot say that "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The record reveals that Frazee—as victim—and the two neighbors—as witnesses—believed that the BB gun was a firearm and that Johnson used it to threaten her. In her victim statement, Frazee wrote that Johnson, among other things, "threatened me with a gun." (Ex. M attachment B at 1.) Moreover, she later clarified that it was a "black hand gun." (*Id.* at 3.) As for the neighbors, Carolyn Galvan noted that Johnson "walked with a gun at his side" and later "raised [the] gun at [Frazee] briefly in which she was yelling no." (*Id.* attachment C at 1). The other witness, Teena Welles, stated that Johnson "got a gun out." (*Id.* attached D at 1.) Taken together, these statements demonstrate that independent witnesses corroborated Frazee's claims, and that Johnson's counsel was not deficient for not moving to withdraw the plea after Frazee recanted.

As for the relevant law, Johnson is mistaken that a BB gun cannot be considered a deadly weapon in New Mexico. This further supports counsel's decision to not withdraw the plea and bolsters my conclusion that the state court did not apply *Strickland* unreasonably. Granted, the Definitions section of the New Mexico criminal code does not list BB guns as deadly weapons.[5] But "when the item is not specifically listed, it has been the longstanding rule of this State to require a jury finding that the instrument used was a deadly weapon." *State v. Traeger*, 29 P.3d

---

[5] "'[D]eadly weapon' means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted." N.M. STAT. ANN. § 30-1-12(B) (West 2016).

518, 521, 526 (N.M. 2001) (noting that a baseball bat is not a deadly weapon per se, and that "a jury should make [the deadly weapon] determination considering the character of the instrument and manner of its use"); *see also State v. Fernandez*, 164 P.3d 112, 114-15 (N.M. Ct. App. 2007) (affirming denial of pre-trial motion to dismiss armed robbery charge because a jury could conclude that the BB gun pointed at the victim, even if unloaded, constituted a deadly weapon under § 30-1-12(B)). Taken together, the evidence and law demonstrate that Johnson's counsel had no basis to seek to withdraw the plea because a jury could—and likely would—conclude that the BB gun was a deadly weapon under these circumstances.

To supplement his ineffective assistance of counsel claim, Johnson filed a Motion to Enter Newly Discovered Information. (Doc. 14.) The information is a *Nolle Prosequi* motion filed by an Assistant District Attorney on May 31, 2013, that Johnson claims is "very beneficial to the ineffective assistance of counsel~failure to move to withdraw the plea pending in this court." (Doc. 14 at 2) (tilde in original). Johnson appears to argue that the *Nolle Prosequi* demonstrates his counsel's ineffective assistance because the dropped charges—which he believes were dropped because they were meritless or fabricated—were used to void the sentencing provisions of his plea agreement. (Doc. 14 at 2-3; *see also* Ex. D.) The state responded that "[t]o the extent Mr. Johnson appears to ask the Court to supplement the habeas record to include the May 31, 2013, *Nolle Prosequi* that he has attached to his motion . . . Respondents do not object." (Doc. 16 at 1.) Accordingly, I will grant Johnson's motion and take judicial notice of the *Nolle Prosequi*.

Johnson's argument is based on an incorrect reading of the terms of his plea agreement. (*See* Ex. D at 5.) Though the *Nolle Prosequi* dropped two charges—one count of Aggravated Battery and two counts of Aggravated Stalking—the charges were not the sole basis for the state

voiding the agreement on sentencing. In the Motion to Void Sentencing Agreement (Ex. F), the State noted that Johnson violated numerous terms of his plea agreement, including contacting Frazee, accumulating the Aggravated Battery and Aggravated Stalking charges, and failing to appear for sentencing. (Ex. F at 1-2.) Moreover, the terms of the agreement indicated that a single violation of any term could result in the State withdrawing the sentencing agreement. (*See id.*; *see also* Ex. D at 5.) I admit the *Nolle Prosequi* into the record but find that Johnson's argument is without merit.

### III.    Involuntary Plea

Johnson next argues that his plea was not voluntary because it was the result of coercion, in violation of the Fourteenth Amendment, and undisclosed exculpatory information, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 1 at 19-20.) Both claims fail.

"The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty." *Fields v. Gibson*, 277 F.3d 1203, 1212-13 (10th Cir. 2002). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (internal quotation and citations omitted). A plea may be rendered involuntary "when an attorney materially misinforms the defendant of the consequences of the plea," *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990) (quotation omitted), or "informs the defendant that he has no choice, [and] must plead guilty," *Fields*, 277 F.3d at 1213.

Here, Johnson argues that "counsel knew that the victim had made statements that would free him, her client[,] from blame but withheld it. Had Petitioner known of victim statements he would not have [p]lead guilty and gone to trial." (Doc 1 at 20.) However, the record from

Johnson's sentencing hearing contradicts his claim. (*See* Ex. K). In particular, Johnson's counsel stated: "I've been aware for a long time that there were issues of Ms. Frazee's truth and, you know, the veracity of what she's – the claim she's made, but she's making them against a man who's already looking at 18 years, Judge, so all that factored into my advice to Mr. Johnson." (Ex. K attachment A at 13.) Moreover, given his alternatives—proceed to trial and face a "potential sentencing exposure [of] 45-70 1/2 years, 45 of which would have been mandatory" (Ex. M at 3), or accept the plea and face "a sentencing exposure of 0-15 years, with no mandatory time" (*id.*); (*see also* Ex. D at 2.)—I cannot say that his decision was unintelligent or irrational. In sum, Johnson failed to demonstrate that he was materially misinformed, told he had no choice, or otherwise coerced into signing the plea agreement.

Rather than coercion, Johnson's claim that his attorney withheld information is likely better suited to an ineffective assistance of counsel claim. However, even if I assume that Johnson's statement is true and construe this as a *Strickland* claim, his argument fails because the state court's application of the second "prejudice" prong was not unreasonable. *See Harrington*, 562 U.S. at 101. At least two things support my conclusion: (1) the existence of two independent witnesses to the domestic violence crimes with the BB gun, and (2) that Frazee would not be a credible witness for the defense at trial regardless of the substance of her testimony.

The existence of two independent witnesses lessens the impact of Frazee's recantation because, as the state judge told her: "[I]n prosecuting these crimes . . . [the prosecution] may not even need your testimony. . . ." (Ex. K attachment A at 7.) In other words, this was not an incident that occurred behind closed doors where the sole victim-complainant recanted. Instead, the crimes here occurred in a public place and were witnessed by two neighbors that submitted signed statements to the police.

Moreover, as noted, Johnson's defense counsel stated at the sentencing hearing that her advice to Johnson regarding the guilty plea included consideration of Frazee's dubious credibility. (*See* Ex. K attachment A at 13.) Johnson's decision whether to proceed to trial, then, depended at least in part on how a jury would evaluate Frazee's testimony. But under either scenario—Frazee testifies for the prosecution against Johnson and the defense impeaches her, or she testifies for the defense, recanting her prior allegations, and the prosecution impeaches her—she would not be a strong witness. Other facts in the record would also undermine the strength of Frazee's recantation at trial, including that she had apparently reconciled with Johnson after three reported domestic violence incidents in the year preceding the sentencing hearing. (*See* Ex. L at 2.)

Taken together, the independent witnesses, defense counsel's awareness that Frazee's credibility would be central to her trial strategy, and Frazee's lack of credibility as a witness do not suggest that there is a reasonable probability that Johnson would have proceeded differently had he known about the recantation. Additionally, and perhaps most importantly, Johnson faced a much greater sentence had he been convicted at trial, which further undermines the probability that he would have rejected a generous plea offer to proceed to trial with an impeachable witness. Given that Johnson's argument has not satisfied "[t]he pivotal question" of "whether the state court's application of the *Strickland* standard was unreasonable," *Harrington*, 562 U.S. at 101, he cannot prevail on this claim.

Johnson's *Brady* claim also fails because the lingering circuit split over whether *Brady* applies to guilty pleas precludes his argument that the state court's rejection of his claim contravenes "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In 2002, the Court resolved part of the split in *United States v.*

*Ruiz*, when it held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. 622, 633 (2002). Still unclear, however, is whether the Court implied that the non-disclosure of exculpatory evidence should be treated differently, and the circuit split continues. *Compare, e.g.*, *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005) (unpublished) (distinguishing impeachment evidence from exculpatory evidence and holding that "the Supreme Court did not imply that the government may avoid the consequence of a *Brady* violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession") *with United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (refusing to reach the merits of Defendant's claim that an undisclosed FBI report violated *Brady* and rendered her guilty plea involuntary because Fifth Circuit precedent, consistent with *Ruiz*, holds that "a guilty plea precludes the defendant from asserting a *Brady* violation"); *see generally* Michael Nasser Petegorsky, Note, *Plea Bargaining in the Dark: The Duty to Disclose Exculpatory Brady Evidence During Plea Bargaining*, 81 FORDHAM L. REV. 3599, 3630 (2013) ("The circuit courts are thus split as to whether *Ruiz* permits post-guilty plea exculpatory *Brady* challenges. On one side, the Seventh and Tenth Circuits view *Ruiz* as creating a distinction between impeachment and exculpatory evidence, requiring the disclosure of the latter, but not the former, before a defendant enters a guilty plea. On the other side, the Fifth Circuit is cautiously joined by the Second and Fourth Circuits in understanding *Ruiz* to preclude all pre-guilty plea *Brady* claims") (footnotes omitted).

    Given the circuit split, it makes no difference how I classify Johnson's proffered exculpatory evidence. If it is impeachment evidence, then *Ruiz* controls, and his claim fails. If it is non-impeachment evidence, then I cannot say that Johnson has clear Supreme Court precedent

in his favor. In sum, I cannot say that the state court's holding that Johnson's "[p]lea entered into on May 17, 2012, was voluntarily entered into" is contrary to settled federal law as defined by the United States Supreme Court. (Ex. O at 1.)

Nevertheless, the parties treat this as a *Brady* issue. I analyze it accordingly, but it does not change the result. "Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, --- U.S. ---,---, 132 S. Ct. 627, 630 (2012). Evidence is "material" if its timely disclosure would have made a different outcome reasonably probable. *Id.*

Here, Frazee's statement that the charges against Johnson were "trumped up" is neither particularly favorable nor material. It is not favorable because it seems like a premeditated recantation, and it is contradicted by three witness statements—one from Frazee and two from her neighbors—completed on the day of the incident. Moreover, the favorability of her recantation testimony may be diminished by her lack of credibility. In particular, she admitted to past drug addiction (*see* Ex. L at 2) and, as noted, reconciled with Johnson after three reported domestic violence incidents in the year preceding the sentencing hearing (*see* Ex. K Attachment A at 7). As for materiality, I cannot say that the result of the proceeding would have been different because, as the judge pointed out to Frazee, the prosecution could have proceeded without her testimony. (*See id.*) Even if Johnson properly raised this as a *Brady* challenge, I cannot agree that he satisfied his burden.

### IV. Insufficient Evidence

Johnson's final claim—that he was falsely charged with the three counts of domestic violence and the related firearm enhancement because a BB gun is not a deadly weapon—fails

for the reasons set forth in Section I. There is evidence in the record and case law in New Mexico to support the charges and his guilty plea.

## CONCLUSION

For the foregoing reasons, I recommend that Johnson's Motion to Enter Newly Discovered Information (Doc. 14) be granted, but his Petition under 28 U.S.C. § 2254 for Writ of Habeus Corpus by a Person in State Custody (Doc. 1) be denied and that this case be dismissed with prejudice. I further recommend that a Certificate of Appealability not be issued. *See* 28 U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE